UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE 461 7TH AVENUE MARKET, INC.,

Debtor.

**MEMORANDUM OPINION
AND ORDER**

20-CV-06216 (PMH)

PHILIP M. HALPERN, United States District Judge:

Appellant 461 7th Avenue Market, Inc. ("Debtor") seeks a stay pending resolution of its appeal challenging a July 15, 2020 Order Lifting Automatic Stay and Converting Chapter 11 Case to a Case Under Chapter 7 of the United States Bankruptcy Code ("July 15th Order") and a July 20, 2020 Order Denying Reconsideration ("July 20th Order" and collectively, "Bankruptcy Orders") issued by Judge Robert D. Drain in the United States Bankruptcy Court for the Southern District of New York. (Doc. 1, "Not. of App.").[1]

The Debtor filed its Notice of Appeal on August 7, 2020. (Not. of App.). On August 12, 2020, the Debtor filed a Proposed Order to Show Cause with Emergency Relief along with supporting papers (collectively, the "First Application"). (*See* Docs. 6-9). That same day, Marianne

---

[1] The Notice of Appeal states that the Debtor appeals the "Order filed July 9, 2020" in addition to the July 20th Order. (Not. of App. at 1). However, the July 15th Order—a copy of which is annexed to the Notice of Appeal (*Id*. at 3-4)—memorialized the decision rendered on the record at the July 9, 2020 appearance (*see* A4471-76). For ease of reference in this Memorandum Opinion and Order, the Court cites to the appendix of record on appeal, to the extent possible, using the appendix's numbering format: "A0001." The appendix totals almost 4,600 pages and the pagination reflected in the table of contents does not correspond properly to the documents contained therein. For example, the table of contents indicates that the "Bankruptcy Administration Docket" begins with the "Docket Report" on "1869," but the document stamped "A1869" is a transcript from an appearance in the Supreme Court of the State of New York in February 2018. (*Compare* Doc. 13-14 at 6, *with id*. at 136). The Court observes also that Debtor has included records from the related adversary proceeding without objection from either the Creditor or the Trustee. Accordingly, the Court will consider those documents where appropriate. *See Wallach v. Kirschenbaum*, No. 11-CV-795, 2011 WL 2470609, at *5 (E.D.N.Y. June 16, 2011) ("[T]he record on appeal of one matter may be supplemented with materials from other adversary proceedings arising from the same bankruptcy case and, both [sic] materials from cases closely related to the appeal." (quoting *Food Distrib. Ctr. v. Food Fair, Inc.*, 15 B.R. 569, 572 (Bankr. S.D.N.Y. 1981))). No appeal is, however, pending in the adversary proceeding. (*See* A0001-0005 (docket of adversary proceeding)).

T. O'Toole, the trustee appointed to administer the Debtor's bankruptcy estate in the Chapter 7 proceeding ("Trustee"), filed a letter requesting an opportunity to be heard with respect to the First Application. (Doc. 10). On August 13, 2020 the Court denied the First Application without prejudice for failure to follow this Court's Individual Practices and various substantive deficiencies. (Doc. 11). The Court directed the Debtor to notify the appellee, Delshah 461 Seventh Avenue, LLC ("Creditor"), and the Trustee that the Court would hold a telephonic conference on August 17, 2020. (*Id*.).

On August 14, 2020, the Debtor filed a motion asking the Court to take judicial notice of two documents filed in *461 7th Ave. Market, Inc. v. Delshah 461 Seventh Ave., LLC*, Index No. 650843/2017, an action in the Commercial Division of the Supreme Court of the State of New York, New York County. (Doc. 15). Three days later, on August 17, 2020, the Debtor filed a second Proposed Order to Show Cause with Emergency Relief along with supporting papers (collectively, the "Second Application"). (*See* Docs. 16-21). The Court held the scheduled telephonic conference that same day; counsel for the Debtor, Creditor, and Trustee appeared. (Aug. 17, 2020 Min. Entry). The Court directed all three parties to meet-and-confer regarding a possible stay on consent, advised the Debtor that any application for injunctive relief must be filed in accordance with this Court's Individual Practices, and granted the Debtor leave to re-file compliant papers should the parties fail to reach an agreement. (*Id*.). The Debtor withdrew the Second Application by letter that same day which the Court granted on August 18, 2020. (Doc. 23, "Mot. to Withdraw").[2]

---

[2] The Debtor's motion to withdraw represented that the Second Application was "hereby withdrawn, with prejudice." (Mot. to Withdraw). Presumably, the Debtor intended—and the Court interpreted the motion to request—only withdrawal *without* prejudice.

Approximately one week later, on August 26, 2020, the Debtor filed a letter advising the Court that, despite its efforts, the Creditor and Trustee "declined to enter into" a stipulation staying enforcement of the Bankruptcy Orders pending appeal. (Doc. 24 at 1). That same day, the Debtor filed a third Proposed Order to Show Cause with Emergency Relief with its supporting papers (the "Third Application"). (*See* Doc. 25; Doc. 26, "Kimm Decl."; Doc. 27, "Debtor Br."). On August 27, 2020, the Court scheduled a telephonic conference for August 31, 2020 and instructed the Creditor and Trustee to each file a letter, no longer than three pages, outlining issues to be raised in connection with the Third Application during the conference. (Aug. 27, 2020 Ord.). The Creditor and the Trustee filed their letters on August 28, 2020. (Docs. 28, 29).[3]

The Court held the scheduled telephonic conference regarding the Third Application on August 31, 2020. (Sept. 1, 2020 Min. Entry). Counsel for the Debtor, Creditor, and Trustee appeared. (*Id*.). The Court directed the Debtor to file a letter providing authority for its appeal and granted the Creditor leave to file a letter itemizing authority regarding the concept of equitable mootness. Both parties filed their letters later that day. (Docs. 30-32).

Upon review of the Third Application, the authorities cited by the Debtor and the Creditor, and all the proceedings herein, the Court signed the associated Order to Show Cause on September 1, 2020. (Doc. 33). The Court directed that any opposition to the Debtor's requested relief address, *inter alia*, the following items: (1) the standing of Young-Il Park, the Debtor's sole shareholder, to pursue the relief sought in the Order to Show Cause; (2) the Debtor's standing to pursue the relief sought in the Order to Show Cause "given the appointment of the Chapter 7 Trustee;" and (3) the burden of proof associated with the request for a stay, "including the requirement for a

---

[3] Contradicting the Debtor's representation that the other parties actively "declined to enter into" a stipulation (Doc. 24 at 1), the Trustee submits that, despite attempts to contact the Debtor, the Debtor never responded (Doc. 28 at 3).

bond." (*Id.* at 2). The Creditor and Trustee filed their opposition papers on September 11, 2020 (Doc. 34, "Trustee Br."; Doc. 36, "Creditor Br."; Doc. 37 "Shah Decl."), and the Debtor filed its reply brief—along with a supplemental declaration—on September 18, 2020 (Doc. 39, "Reply Br."; Doc. 39-1, "Supp. Kimm Decl.").

For the reasons set forth below, the request for a stay pending appeal is DENIED.

## BACKGROUND

This is a contentious landlord-tenant dispute that has meandered through state and federal courts for almost four (4) years. The facts pertinent to this extant analysis are recounted herein.

On or about January 5, 2011, the Debtor assumed a multi-year lease ("Lease") for a commercial property located at 461 Seventh Avenue, New York, New York 10001. (Kimm Decl. ¶ 6; A1803). Upon assumption of the Lease, the Debtor paid its then-landlord an assignment fee of $100,000.00 and the parties agreed to extend the Lease term into 2024. (A1804). Shortly after assuming the Lease, the Debtor—with its then-landlord's consent—made a number of alterations to the property. (*See* Kimm Decl. ¶¶ 7-9; A0392).

By contract dated February 11, 2015, the Creditor purchased the property from the Debtor's initial landlord. (A0068-103). A little less than two years later, on January 19, 2017, the Creditor issued an eight-page "notice to cure" alerting the Debtor that it was in violation of the Lease and various provisions of the New York City Building Code (the "Code"). (A0461-68). The Debtor disputed the notice because the Creditor was aware of the purported violations at the time it purchased the property and "should have terminated the contract and walked away" or "collected the $70,000.00 . . . set aside in escrow" to remedy New York City Department of Building ("DOB") violations. (Kimm Decl. ¶ 16; *see also* Debtor Br. at 9, 12). The Debtor filed an action, *7th Ave. Market, Inc. v. Delshah 461 Seventh Ave., LLC*, No. 650843/2018, in the Commercial

4

Division of the Supreme Court of the State of New York, New York County, the following month. (Kimm Decl. ¶ 18; A1805-20).

Before the New York State Supreme Court the Debtor sought, *inter alia*, an injunction pursuant to *First Nat'l Stores, Inc. v. Yellowstone Shopping Ctr., Inc.*, 237 N.E.2d 868 (N.Y. 1968). (Kimm Decl. ¶ 18; A1815-16). The state court granted the injunction on April 12, 2017 and directed, *inter alia*, that the Debtor "proceed in good faith to cure all specifically identified violations of the Lease and that [the Debtor] seek all necessary consents from the [Creditor] which consent shall not be withheld unreasonably." (A1827). In an April 26, 2018 Order—more than a year after granting the injunction—Justice O. Peter Sherwood concluded that the injunction expired in part because of the Debtor's inaction:

> At the time of the evidentiary hearing that resulted in issuance of the February 16, 2018 order [which directed that the *Yellowstone* injunction would expire on March 15, 2018, (A2020)], the court commented that plaintiff had done little to cure the then existing violations for over a year and as a result, the court would allow plaintiff only a month to file for the necessary permits with the New York City Department of Buildings ("DOB"). As of March 15, 2018, plaintiff had not filed a proper application and had not sought to show good reason for a further extension of the *Yellowstone* injunction. Accordingly, the injunction has expired.

(A2045). Precisely one week later, on May 3, 2018, the Debtor filed a voluntary bankruptcy petition under Chapter 11, which commenced the action before Judge Drain ("Bankruptcy Action"). (Kimm Decl. ¶ 26; Doc. 26-7). Shortly thereafter, the Debtor initiated an adversary proceeding against the Creditor pressing claims for harassment, breach of the covenant of quiet enjoyment, breach of the implied covenant of good faith and fair dealing, and declaratory judgment ("Adversary Action"). (Kimm Decl. ¶ 26; Doc. 26-15).

Focusing on the Debtor's alleged default under the Lease and attendant Code violations during a September 5, 2018 appearance, the bankruptcy court observed "that the professionals on this could be able to work it out, if the parties are sincere in doing so." (Kimm Decl. ¶ 27; Doc. 26-3 at 156:21-22). The matter was adjourned so that the parties' agents, along with "the DOB people," would have an opportunity to "work it out." (Doc. 26-3 at 156:18-159:10). At an appearance on November 29, 2018, the parties discussed an "administrative determination" issued by a DOB building inspector which highlighted certain existing violations—particularly "the bathroom and extra exit from the basement" among other things—that had to be addressed. (A3034-35, A3039; *see also* A3010 (November 2, 2018 DOB audit noting "need to provide Handicapped Accessibly [sic] for the second floor bathroom" and "[p]rovide Two means of egress (enclosed) from Cellar and 2nd Floors [sic]")). When pressed by the bankruptcy court for how much longer the DOB process would take—specifically, when the DOB would "say one way or another, you must fix this or . . . that you don't need to do this"—the Debtor said that it would not "play[] out much further into the future . . . ." (A3041-42). Based on the parties' representations at that appearance, Judge Drain noted that "as far as the regulatory process is concerned, there's an end to it, it would seem to me, within a matter of weeks . . . ." (A3045). Judge Drain concluded:

> [T]he DOB will speak or not speak after the debtor has a chance to reason with them. It's not a ruling. It's a step away from a ruling.
>
> So my inclination here is to extend the period to assume or reject [the Lease] so a reasonable amount of time can happen for that. It would seem to me that before doing a mediation, you should get that answer from the DOB one way or another. If the DOB is going to require there to be some sort of ramp up to the - - or elevator to the second floor, then that's going to be prohibitively expensive for the debtor, either in terms of money or in terms of taking up space in the debtor's footprint.

> On the other hand if - - same thing with the extra entrance to the basement.
>
> . . . .
>
> If the DOB is satisfied, then we're done. If the DOB isn't satisfied, as far as I'm concerned, we're done also.

(A3046, A3048).

Approximately two weeks later, on December 13, 2018, the Creditor filed a document entitled "Statement Regarding DOB Determination" which represented, in pertinent part, that the parties agreed that the DOB's decision on the appeal "will be deemed final for purposes of conditional lease assumption determination in Bankruptcy." (A3080). At an appearance the next day, Judge Drain noted that the process that the parties outlined was "consistent with, I think, the parties' efforts to move along with this" (A0724) and that "the whole premise behind this process is that it will lead to an answer from the DOB . . . ." (A0736). "[I]f the answer is yes then . . . it's a conditional assumption [of the Lease]. If the answer is no, then basically the case is open [sic]."[4] (*Id*.). John Raine, the Manhattan Borough Commissioner for the DOB, rendered his decision on June 5, 2020—approximately eighteen months after that appearance. (Kimm Decl. ¶ 39; A4273, A4275; Doc. 26-22). Commissioner Raine concluded that the initial assessment was correct, and that, *inter alia*, handicapped access to the second-floor bathroom and two means of egress from the cellar and second floor were required. (A4273).

One week after Commissioner Raine rendered his decision, the Creditor moved to dismiss the proceeding and argued, *inter alia*, that the Debtor's motion to assume the lease should be denied, the premises surrendered, and the proceeding dismissed or converted from one under

---

[4] Based upon the context, the Court believes this is a transcription error and should instead read, "the case is *over*."

Chapter 11 to one under Chapter 7. (A4255-71). The Debtor opposed and argued, *inter alia*, that

the Creditor was preventing any attempts at curing and that, in actuality, there was an additional

level of DOB review that had to be exhausted. (A4407). The Debtor's submission reflects a

"Return Date" of July 9, 2020 at 10:00 a.m. (A4402).

The motion was heard by Judge Drain on July 9, 2020. (*See* A4367-68 (notice of hearing

dated June 12, 2020); A4432-80 (transcript)). At that appearance, the parties disputed whether the

Creditor would allow the Debtor to cure the violations identified, as Commissioner Raine's

analysis noted that the Creditor was not permitting remediation. (*See generally* A4441-49). Judge

Drain deemed the question of consent inconsequential:

> The issue is whether the debtor has the ability, the financial
> wherewithal, to properly cure those violations. I don't need the
> landlord's consent for the debtor to do that. [Section] 365 lets that
> be forced on the landlord. But the debtor has to show me that it has
> the ability to do that.
>
> My assumption has been since this issue first arose that the debtor
> currently doesn't. Since this arose, not even focusing on the debtor's
> present financial condition, but going back well over a year, that the
> debtor did not have the wherewithal to make those physical changes
> to the building either monetarily or just as far as the building is
> concerned to continue its business going forward with those
> changes. So I don't see that assertion in the opposition. And indeed,
> the opposition raised the defense of impossibility as opposed to an
> ability to cure.

(A4450). The bankruptcy court concluded that, "[i]f the debtor can't make those cures on a prompt

basis, then the debtor won't be able to do a Chapter 11 plan." (A4451).

After determining that the Debtor had not shown an ability to cure, Judge Drain converted

the proceeding from one under Chapter 11 to one under Chapter 7 and denied the Debtor's oral

motion for a stay pending appeal. (A4471-75, A4476-78). The bankruptcy court issued a written

order reflecting its determination at the July 9, 2020 hearing on July 15, 2020. (A4493-94). The

Trustee was appointed by the United States Trustee on July 16, 2020 (Bankr. Doc. No. 185)[5], and

the motion for reconsideration was denied on July 20, 2020 (A4577-78).

On July 22, 2020, the Debtor timely filed a notice of appeal challenging the Bankruptcy

Orders. (Not. of App.).

## STANDARD OF REVIEW

The district court may entertain an application to stay an order of the bankruptcy court

pending an appeal pursuant to Federal Rule of Bankruptcy Procedure 8007(b). The request for a

stay "requires application of the familiar four-factor test" laid out by the Supreme Court. *In re*

*Platinum Partners Value Arbitrage Fund L.P.*, No. 18-CV-5176, 2018 WL 3207119, at *3

(S.D.N.Y. June 29. 2018). Those four factors are:

> (1) whether the stay applicant has made a strong showing that [it] is
> likely to succeed on the merits; (2) whether the applicant will be
> irreparably injured absent a stay; (3) whether issuance of the stay
> will substantially injure the other parties interested in the
> proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

While "[t]he first two factors are the most critical," *New York v. United States Dep't of Homeland*

*Sec.*, --- F.3d ---, 2020 WL 5495530, at *3 (2d Cir. Sept. 11, 2020), "[t]he Second Circuit has held

that these criteria should be applied 'somewhat like a sliding scale . . . more of one excuses less of

the other.'" *In re Platinum Partners*, 2018 WL 3207119, at *3 (quoting *Thapa v. Gonzales*, 460

F.3d 323, 334 (2d Cir. 2006) (first alteration added)). "[A] stay is not a matter of right . . . rather,

a stay is an exercise of judicial discretion, and [t]he party requesting a stay bears the burden of

---

[5] "Bankr. Doc. No." refers to the associated docket entry in the Bankruptcy Action.

9

showing that the circumstances justify an exercise of discretion." *United States Dep't of Homeland Sec.*, 2020 WL 5495530, at *3 (internal quotation marks omitted, first alteration added).

## ANALYSIS

I.   The Debtor Lacks Standing to Seek a Stay Pending Appeal

Before turning to the substance of the extant application, the Court must first determine whether the Debtor even has standing to seek a stay in light of the Trustee's appointment. For the reasons that follow, the Court concludes that, upon conversion to a Chapter 7 proceeding and the appointment of the Trustee, the authority to pursue this application on behalf of the Debtor vested in the Trustee, alone.

"The primary purpose of [C]hapter 7 bankruptcy is to liquidate estate assets and distribute the proceeds to creditors, under the supervision of the Court and without unsanctioned interference from creditors of the debtor." *In re Riley*, No. 13-61356, 2017 WL 4334033, at *4 (Bankr. N.D.N.Y. Sept. 28, 2017) (citing *In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir. 1983)). Consequently, "[t]he commencement" of a Chapter 7 proceeding "creates an estate" which—with exceptions—includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Second Circuit has explained that "[e]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541" and that § 541 encompasses "causes of action owned by the debtor or arising from property of the estate." *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) (internal quotation marks omitted). An interim trustee is likewise appointed "[p]romptly" by the United States Trustee at the outset of the Chapter 7 proceeding. 11 U.S.C. § 701(a)(1); *see also* 11 U.S.C. § 702 (outlining the process by which creditors may elect a trustee to replace the interim trustee).

Once appointed, a trustee "is the representative of the estate," 11 U.S.C. § 323(a), with the "capacity to sue and be sued," 11 U.S.C. § 323(b). As observed by the Supreme Court:

> the Bankruptcy Code gives the trustee wide-ranging management authority over the debtor. In contrast, the powers of the debtor's directors are severely limited. Their role is to turn over the corporation's property to the trustee and to provide certain information to the trustee and to the creditors. Congress contemplated that when a trustee is appointed, [s]he assumes control of the business, and the debtor's directors are completely ousted.

*Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352-53 (1985) (internal citations and quotation marks omitted). In short, "[o]nce appointed, the trustee assumes control over the debtor's entire estate and all such interests" and that "control is not limited to the corporation's management. The trustee also assumes the sole power to prosecute legal claims on behalf of the debtor." *Quest Ventures, Ltd. v. IPA Mgmt. IV, LLC*, No. 17-CV-4026, 2018 WL 922145, at *1-2 (E.D.N.Y. Feb. 15, 2018).

The parties do not dispute the essential facts leading to this application. All agree that Judge Drain converted this case into a Chapter 7 proceeding by a written order dated July 15, 2020 and denied reconsideration of that decision in a written order dated July 20, 2020. (*See* Creditor Br. at 1; Trustee Br. at 1; Reply Br. at 1). Nor is there any dispute that the Trustee was appointed by the United States Trustee on July 16, 2020 (Bankr. Doc. No. 185) or that the Trustee has since acted in her capacity as representative of the estate (*see* Bankr. Doc. No. 220). The parties dispute only the import of these facts on whether the Debtor may act independently of the Trustee. (*See* Debtor Br. at 20-21; Creditor Br. at 10-14; Trustee Br. at 6-10; Reply Br. at 2-4). The Court concludes, based upon the authorities cited *supra* that, once appointed, the Trustee alone has standing to seek a stay on behalf of the Debtor. If the Court were to conclude otherwise and recognize that the Debtor had a right to pursue the instant application—over the Trustee's

opposition—the result would strip the Trustee of her autonomy and force her to reckon with a duality of authority. This conclusion would defeat the very purpose of appointing a trustee in a Chapter 7 proceeding. On this point, the Court concludes that recognizing such a duality and forcing the Trustee to compete for control of the Debtor's legal rights "cannot be squared with *Weintraub*'s rule that corporate officers are 'completely ousted' once a trustee has been appointed." *Quest Ventures, Ltd.*, 2018 WL 922145, at *2 (quoting *In re C.W. Mining Co.*, 636 F.3d 1257, 1262 (10th Cir. 2011)).

      The Debtor makes two arguments in favor of standing: (1) it has standing as a person aggrieved (Debtor Br. at 20-21; Reply Br. at 2-4); and (2) upon the Trustee's abandonment of the Lease (after the Bankruptcy Orders), the property interest in the Lease reverted back to the Debtor (Reply Br. at 4-5). Neither of these arguments have any bearing on the question presented. With respect to the first argument, there is no doubt that a "person aggrieved" may appeal an order of the bankruptcy court. *See e.g.*, *Int'l Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 747-48 (2d Cir. 1991). Yet, whether the Debtor qualifies as a "person aggrieved" has no impact on who has authority to seek a stay on the Debtor's behalf.[6] As to the second argument, assuming without determining that the Debtor is correct that the Trustee abandoned the Lease *and* that the

---

[6] The Court disregards any argument made on behalf of Mr. Park because Mr. Park did not file a notice of appeal. "[I]n the absence of a timely notice of appeal in the district court, the district court is without jurisdiction to consider the appeal, regardless of whether the appellant can demonstrate 'excusable neglect.'" *In re Siemon*, 421 F.3d 167, 169 (2d Cir. 2005); *see also In re Mark IV Indus., Inc.*, 558 F. App'x 135, 137 (2d Cir. 2014) (same). Here, the Notice of Appeal purports to be filed on behalf of the Debtor alone. (Not. of App. at 1 ("PLEASE TAKE NOTICE that debtor/plaintiff 461 7th Avenue Market, Inc., appeals . . . .")). In short, the Debtor can only "assert [its] own legal rights and not those of third parties," *In re Lehman Bros. Holdings, Inc.*, No. 19-CV-6397, 2020 WL 1503473, at *1 (S.D.N.Y. Mar. 30, 2020) (quoting *In re Old HB, Inc.*, 525 B.R. 218, 222 (S.D.N.Y. 2015)), and the time for Mr. Park to appeal the Bankruptcy Orders has long since passed, Fed. R. Bankr. P. 8002(a)(1). *See also* Fed. R. Bankr. P. 8003(a)(1) (providing that an appeal may be taken "only by filing a notice of appeal with the bankruptcy clerk within the time allowed by Rule 8002").

interest therein reverted to the Debtor upon abandonment, the Debtor has not explained how that fact provides standing to seek the relief herein. (*See generally* Debtor. Br.; Reply Br.). Nor could it—the July 15th Order did not decree the Lease's disposition; it merely instructed the Trustee to decide "*whether* to assume or reject" the Lease. (A4582 (emphasis added)). Even if there were reverter, that fact does not create litigation authority when the Bankruptcy Code mandates another result.

For these reasons, the Court concludes that the Debtor has no standing to seek a stay on its own behalf; rather, the application for a stay can be made only by the Trustee. Consequently, the application for a stay pending appeal is denied.

II.     The Application for a Stay Pending Appeal

Assuming *arguendo* that the Debtor had standing to pursue a stay pending appeal of the Bankruptcy Orders, the Court would nevertheless deny the application because the Debtor has not made the showing required for the extraordinary relief sought pursuant to Federal Rule of Bankruptcy Procedure 8007(b).

a.     The Debtor's Likelihood of Success on the Merits

The first factor, identified by the Second Circuit as one of two "critical" factors in the analysis, *United States Dep't of Homeland Sec.*, 2020 WL 5495530, at *3, and by other courts in this Circuit as "[t]he single most important factor," *In re Taub*, 470 B.R. 273, 278 (E.D.N.Y. 2012) (quoting *In re Baker*, No. 05-CV-3487, 2005 WL 2105802, at *3 (E.D.N.Y. Aug. 31, 2005)), requires the Court to determine whether the Debtor "has made a strong showing that [it] is likely to succeed on the merits." *Nken*, 556 U.S. at 434 (internal quotation marks omitted). According to the Second Circuit, "[t]he necessary level or degree of possibility of success will vary according to the court's assessment of the other [three] factors." *Mohammed v. Reno*, 309

F.3d 95, 101 (2d Cir. 2002) (internal quotation marks omitted). Here, aside from the fact that the other three factors militate against granting a stay, the Debtor fails to make the required showing on this point.

"Normally, when reviewing decisions of the Bankruptcy Court, District Courts apply a de novo standard of review of the Bankruptcy Court's conclusions of law and review a Bankruptcy Court's findings of fact under a clearly erroneous standard." *In re Bridge to Life, Inc.*, No. 05-CV-5499, 2006 WL 1329778, at *3 (E.D.N.Y. May 16, 2006). Here, however, the decisions challenged—one converting the case into a Chapter 7 proceeding, the other denying reconsideration of conversion—are reviewed, according to the case law, by this Court under a synonymous test: abuse of discretion. *In re Lynch*, 795 F. App'x 57, 59 (2d Cir. 2020) ("An order converting a bankruptcy case for cause is reviewed for abuse of discretion.") (citing *In re Blaise*, 219 B.R. 946, 950 (2d Cir. BAP 1998)); *In re Emmons-Sheepshead Bay Dev. LLC*, 518 B.R. 212, 219 (E.D.N.Y. 2014) (on appeal from bankruptcy court, "the Court reviews an order denying reconsideration for an abuse of discretion"), *aff'd* 662 F. App'x 100 (2d Cir. 2016); *see also Amelio v. Piazza*, No. 19-CV-314, 2019 WL 5199600, at *3 (S.D.N.Y. Aug. 27, 2019) (conversion orders and reconsideration thereof are reviewed for abuse of discretion). The Second Circuit has confirmed the similar parameters of the abuse of discretion test: "A bankruptcy court abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings, or commits a clear error of judgment . . . based on all the appropriate factors."

*In re Lynch*, 795 F. App'x at 59 (internal quotation marks omitted, alteration in original). It is with this view that the Court considers the first factor.[7]

"[O]n request of a party in interest, and after notice and a hearing, the [bankruptcy] court shall convert a case under this chapter to a case under chapter 7 or dismiss . . . for cause . . . ." 11 U.S.C. § 1112(b)(1). The statute provides "sixteen examples of events that may constitute cause." *In re Jenkins*, No. 17-CV-5189, 2018 WL 2139209, at *2 (E.D.N.Y. May 9, 2018) (quoting *In re SH S&B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010)); *see also* 11 U.S.C. §§ 1112(b)(4)(A)-(P). Those examples represent "a non-exhaustive list of circumstances constituting cause." *Lynch v. Barnard*, 590 B.R. 30, 36 (E.D.N.Y. 2018) (citing *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1311 and n.5 (2d Cir. 1997)), *aff'd In re Lynch*, 795 App'x 57 (2d Cir. 2018)); *see also In re Casse*, 198 F.3d 327, 334 (2d Cir. 1999) (noting that "the statute illustrates [cause] by a list of specified occurrences"). "Once cause for relief is shown, the [Bankruptcy] Court has broad discretion to either convert or dismiss the Chapter 11 case. Although this discretion is not completely unfettered, the [Bankruptcy] Court is not required to give exhaustive reasons for its decision." *In re Jenkins*, 2018 WL 2139209, at *2 (quoting *In re AdBrite Corp.*, 290 B.R. 209, 216 (Bankr. S.D.N.Y. 2003) (alterations in original)).

During the July 9, 2020 appearance, Judge Drain noted that conversion under 11 U.S.C. § 1112(b) was two-step process: (1) determine whether cause to convert exists; and (2) determine

---

[7] In its reply papers, the Debtor seems to suggest that the proper standard is not abuse of discretion. (Reply Br. at 8). The cases cited do not support that conclusion. In *In re Vebeliunas*, the Second Circuit was concerned with a bankruptcy court judgment which concluded that two pieces of real property were not considered part of the bankruptcy estate. 332 F.3d 85, 89-90 (2d Cir. 2003). As for *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, that case concerned "whether the district courts correctly determined that those courts had jurisdiction and were not required to abstain . . . ." 639 F.3d 572, 578 (2d Cir. 2011).

whether conversion or dismissal was in the creditors' best interests. (A4464). After finding that

the Debtor failed to explain how it would cure the violations, Judge Drain concluded:

> There's clearly cause here . . . . The debtor is incapable of assuming
> the lease and therefore incapable of proposing a Chapter 11 plan or
> reorganization which is - - which would be considered upon the
> lease getting assumed.
>
> . . . .
>
> There's cause under Section 1112(b)(4)(A), substantial or
> continuing loss to a diminution of the estate and the absence of a
> reasonable likelihood of rehabilitation.
>
> Frankly, also, the simple inability to confirm a plan would mean that
> the continued accrual of administrative expenses satisfies the first
> prong of that test and clearly satisfies the second one.

(A4464, A4471-72). The question for this Court to consider now is whether the Debtor has shown

a likelihood of establishing that Judge Drain abused his discretion in finding cause existed under

11 U.S.C. § 1112(b)(4)(A). The Court finds that the Debtor has not made such a showing.

By the July 9, 2020 appearance—after waiting approximately eighteen months—

Commissioner Raine issued a decision confirming that the property was in violation of the Code

with respect to, among other things, handicap access to the second-floor bathroom and egress from

the basement and second floor. (A4273). While the Debtor argued that Commissioner Raine's

conclusions bore "no seal and no signature" (A4403) and was not a final DOB determination

(A4407; Kimm Decl. ¶ 43), the parties had agreed that the DOB's determination at that stage would

"be deemed final for purposes of conditional lease assumption determination in Bankruptcy."

(A3080). As the violations were confirmed by the DOB in the June 5, 2020 "advisement" (A4441),

the question before the bankruptcy court was "whether the [D]ebtor has the ability, the financial

wherewithal, to properly cure those violations." (A4450). Observing on the record that "[t]he

[D]ebtor has made no written assertion that it could cure the default," (A4453), and that there was "no evidence at all that the [D]ebtor can cure these defaults" (A4462), Judge Drain found cause existed and granted the motion to convert. (A4471-75; *see also* A4454 ("I have been crystal clear for over a year that if the [D]ebtor could not show me it could cure whatever defaults the DOB says need to be cured, that I would convert this case because the debtor could not do a plan, because it could not assume the lease")).

As mentioned *supra*, the facts are not in dispute; accordingly, there is no likelihood of success that the Debtor will show that Judge Drain abused his discretion as a result of "clearly erroneous factual findings." *In re Lynch*, 795 F. App'x at 59 (internal quotation marks omitted). The remaining consideration is whether the Debtor has established that it will succeed in showing that Judge Drain "base[d] [his] decision on an erroneous view of the law . . . or commit[ted] a clear error of judgment." *Id*. (internal quotation marks omitted). Simply put, the Debtor failed to establish that it could cure the Lease defaults and, as a result, that it could assume the Lease in any reorganization plan. Without the Debtor's assumption of the Lease and the ability to reorganize, the Court properly, and with cause, converted the case to Chapter 7. The Debtor makes five arguments asserting error, but none create the conclusion that there is a strong likelihood of success on the merits.

On its first argument, the Debtor contends that Judge Drain erred because the Debtor could "prepare a workable plan of reorganization in due course." (Debtor Br. at 6). This position ignores Judge Drain's finding that no evidence existed to show the Debtor could cure (A4462) and therefore could not "do a Chapter 11 plan." (A4451). The Debtor does not explain how this conclusion, based on the law, was erroneous. The Debtor's next argument posits that it will prevail on the merits because when the Creditor assumed the Lease it waived any claim to breaches or

violations. (Debtor Br. at 7-11). However, the Debtor agreed to cure the violations if permitted, and if not, otherwise accept the DOB's decision (*see, e.g.*, A0724-25, A0735-36, A3045-49, A3079-80, A4449-54); and the Bankruptcy Code requires a debtor to show it at least has the capacity to cure violations before assuming a lease, 11 U.S.C. § 365(b)(1)(A). The Debtor does not explain how the Creditor's "waiver" set forth in a real estate contract with a third-party and relating to its initial purchase of the real estate years ago trumps these rules of law or Judge Drain's error in relying upon them.

Challenging Judge Drain's analysis generally, the Debtor next insists that Judge Drain erred because he should have analyzed all sixteen factors listed under 11 U.S.C. § 1112(b)(4). (Debtor Br. at 11). Here, the Debtor cites no authority—and the Court has found none—requiring a sixteen-point analysis to convert a proceeding. The statute provides merely a non-exhaustive list of exemplary scenarios that *might* constitute cause. *See Lynch*, 590 B.R. at 36; *In re Jenkins*, 2018 WL 2139209, at *2. For the Debtor's fourth argument, it claims that the motion should not have been heard on July 9, 2020 because it "was not 'teed-up' for consideration on the merits . . . ." (Debtor Br. at 13). Nevertheless, the Debtor knew that the motion was set for a hearing that day (A4402) and the Second Circuit has held that "a full evidentiary hearing is not required so long as the record permits the bankruptcy court to draw all the necessary inferences to determine cause." *In re Lynch*, 795 F. App'x at 59 (quoting *In re C-TC 9th Ave. P'ship*, 113 F.3d at 1312-13).[8] In its last argument, the Debtor argues that the bankruptcy court disregarded improperly its claim that

---

[8] The Debtor argues also that the bankruptcy court erred because the hearing violated Rule 9014-2 of the Local Rules of the U.S. Bankruptcy Court for the Southern District of New York, which provides that "[t]he first scheduled hearing in a contested matter will not be an evidentiary hearing" except in certain circumstances. (Local Bankr. R. 9014-2; Reply Br. at 6). Yet, the Debtor does not explain how it was error for Judge Drain to hold the hearing when "[t]he bankruptcy court may convert to Chapter 7 . . . *sua sponte* . . . ." *In re Lynch*, 795 F. App'x at 59 (citing 11 U.S.C. § 105(a)).

Commissioner Raine had a conflict of interest. (Debtor Br. at 13-19).[9] Yet, Judge Drain misapplied no law when he recognized that he lacked jurisdiction over the DOB's advisement, and the Debtor does not explain how it was an abuse of discretion for the bankruptcy court to conclude that the Debtor's objection would have to be reviewed by the DOB. (A4456). As the Debtor is aware, "a person allegedly aggrieved by the DOB . . . must exhaust his or her administrative remedies via an appeal to the [Board of Standards & Appeals] before seeking judicial review." *Stathis Enters., LLC v. City of New York*, No. 161107/2017, 2019 WL 1421375, at *2 (Sup. Ct. N.Y. Cty. Mar. 29, 2019); *see also* A4407 (quoting *Stathis Enters., LLC.*, 2019 WL 1421375 at *2).

As the Debtor has not established a strong likelihood of showing that Judge Drain abused his discretion by converting the proceeding from one under Chapter 11 to one under Chapter 7 based on an erroneous view of the law, clearly erroneous factual findings, or any other clear error of judgment, this factor weighs against granting the stay.

b.   Irreparable Injury to the Debtor Absent a Stay

As to irreparable injury absent a stay—the second "critical" factor to consider, *United States Dep't of Homeland Sec.*, 2020 WL 5495530, at *3—"[h]arm is not irreparable where it is remote or speculative or where it can be fully remedied by monetary damages." *29 Brooklyn, LLC v. Chesley*, No. 15-CV-5180, 2015 WL 9255549, at *2 (E.D.N.Y. Dec. 16, 2015); *see also Pisarri v. Town Sports Int'l, LLC*, 758 F. App'x 188, 190 (2d Cir. 2019) (explaining that irreparable injury "is a kind for which a monetary award cannot be adequate compensation") (internal quotation marks omitted). Here, the injury appears to be nothing more than money damages.

---

[9] The Court notes that whole paragraphs of argument on this issue are repeated in the Debtor's moving brief. (*Compare* Debtor. Br. at 16-17, *with id.* at 18-19).

The Debtor argues that it has established irreparable harm "as a matter of law" because it "will be unable to reorganize in Chapter 11."[10] (Debtor Br. at 5). This is an incorrect conclusion. The Debtor has been in Chapter 11 for more than two years, a reorganization plan has not been confirmed, and the bankruptcy court found no evidence to suggest that the Debtor actually *could* reorganize. Such facts do not give rise to irreparable harm because "*losing the chance* to propose a reorganization plan cannot amount to irreparable injury if there is no hope of confirming the plan." *In re 473 W. End Realty Corp.*, No. 14-CV-2321, 2014 WL 2213082, at *2 (S.D.N.Y. May 12, 2014) (emphasis added); *see also In re Hi-Toc Dev. Corp.*, 159 B.R. 691, 693 (S.D.N.Y. 1993) ("[S]ince no real likelihood of successful reorganization appears to exist, no irreparable injury flows from the conversion to Chapter 7."). This factor weights against granting the application.

    c.   <u>Substantial Injury to Others</u>

The third factor requires the Court to consider "not irreparable harm, but substantial harm." *Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmbH*, No. 14-CV-585, 2015 WL 5051769, at *4 (S.D.N.Y. Aug. 26, 2015) (citing *LaRouche v. Kezer*, 20 F.3d 68, 72 (2d Cir. 1994)). The Debtor failed to consider the injury to other parties, arguing simply that it "is the only party" who may be injured. (Debtor Br. at 19). This is a myopic view. The stay that the Debtor

---

[10] The cases cited for this premise does not support the Debtor's conclusion. Rather, they stand broadly for the proposition—in distinguishable circumstances, outside of bankruptcy—that a movant may show irreparable harm when its business will be destroyed. *See N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 296 F. Supp. 3d 442, 458 (E.D.N.Y. 2017) (denying application for injunction in an antitrust action but finding irreparable harm where the plaintiff showed "the likely total loss of its business"); *Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*, 754 F. Supp. 2d 616, 621-23 (S.D.N.Y. 2010) (finding irreparable harm where, absent injunction, defendant would breach a licensing agreement and leave plaintiff unable to provide its product to customers); *Galvin v. New York Racing Ass'n*, 70 F. Supp. 2d 163, 172 (E.D.N.Y. 1998) (equine veterinarian "demonstrated that his . . . practice will be substantially damaged, if not destroyed, during the pendency of this lawsuit" if license not reinstated). Not only are these cases unrelated to conversion, but it is unclear that such a loss would exist in any event. The Debtor told Judge Drain both that it operated during the pandemic (A4465) and that "there's nothing here but wilting lettuce and rotting tomatoes for a trustee." (A4464).

20

seeks is not to maintain the status quo; rather, the Debtor seeks mandatorily to unravel virtually all actions taken by the bankruptcy court, the Creditor, and the Trustee since July 15, 2020. Granting this stay would operate to artificially turn the clock back, place the Debtor in a type of suspended reality, grant the Debtor ultimate relief, and require that the Creditor—which currently possesses the property (Shah Decl. ¶ 8)—to surrender the premises. On this score, to "reactivate" the Lease, the Debtor would have to pay monthly rent totaling at least $18,000. (Shah Decl. ¶ 10 (advising that the Debtor's monthly rent is "approximately $26,000"); Doc. 39-2 (bank statement showing payment from the Debtor to Creditor, purportedly for July 2020 rent, in the amount of $26,616.07); *but see* A1752 (reflecting $18,000 monthly rent); Reply Br. at 10 (arguing that "a bond of $25,000" would be sufficient to cover "one months' [sic] rent and taxes")). Yet, the Trustee reports that there are no funds left in the estate to make those payments (*See* Trustee Br. at 16-17; Supp. Kimm Decl. ¶ 17; *see also* Bankr. Doc. No. 220); and the property has been surrendered to the Creditor (Shah Decl. ¶ 8). Aside from forcing the Creditor to bear the brunt of likely not receiving rent, the relief sought would limit the authority of the Trustee and, perhaps, compel her to seek recoupment of funds dispersed to creditors and a return of the property from its owner. (*See* Bankr. Doc. No. 220).

This factor weighs decidedly against granting the stay.

a. Harm to the Public Interest

The fourth factor asks the Court to "ensure that [the] injunction does not cause harm to the public interest." *U.S. S.E.C. v. Citigroup Global Mkts. Inc.*, 673 F.3d 158, 163 n.1 (2d Cir. 2012). The Debtor argues that public interest "favors the courts holding parties to contractual obligations . . . ." (Reply Br. at 9). While "[t]here is undoubtedly a public interest in enforcing valid contracts" *HRB Res. LLC v. Schon*, No. 19-CV-339, 2019 WL 4015256, at *3 (N.D.N.Y. Apr. 25, 2019), the Debtor did not "address[] the competing public interest in the expeditious administration of

bankruptcy cases [which] is impaired by obstructing a trustee's efforts to collect, liquidate and distribute assets to creditors of the estate." *In re Metiom, Inc.*, 318 B.R. 263, 272 (S.D.N.Y. 2004) (quoting *In re MGL Corp.*, 262 B.R. 324, 330 (Bankr. E.D. Pa. 2001) (first alteration added)). Given the Court's conclusion that the Debtor is unlikely to succeed on the merits, granting "the stay would prolong the bankruptcy proceeding with no foreseeable offsetting gain and thus injure creditors" which "would be contrary to the public interest." *In re Hi-Toc Dev. Corp.*, 159 B.R. at 693. Accordingly, this factor also weighs against granting the application.

## CONCLUSION

Based upon the foregoing, the Court concludes that the Debtor lacks standing to make the instant application and, in any event, on balance and in the exercise of discretion, the Court concludes that the Debtor failed to make the showing required for a stay pending appeal. Consequently, the Debtor's motion for a stay pending appeal is DENIED.

**SO ORDERED:**

Dated:   New York, New York
         October 2, 2020

_____
PHILIP M. HALPERN
United States District Judge